Could we call the second case please? Selby v. State Farm Good morning, counsel. Still morning. Good morning. Since you're both here, come on up. We know you well, but please introduce yourselves again for the record. Good morning. Grace Wein, W-E-I-N, representing the plaintiffs. Good morning, Your Honor. I'm still Jim Gaughan. I'm still representing State Farm. Good morning, Mr. Gaughan. Good morning, both of you. You know the drill. We can be a little lenient, but we're going to try to stick to 15 minutes a side. I guess, Ms. Wein, you are still the appellant, so we'll let you go first and reserve some time for rebuttal. Please help yourself. And I do want to say at the outset, we appreciate the fact that you have supplemented your briefs not once, but twice. This has been a bit of a difficult affair, especially when the record came back electronically and it was all out of sorts with the original paper record. So thank you for all the work you've done on this case to get us to where we are today. And with that, we'll give the floor to Ms. Wein. Mr. Gaughan, you can have a seat. The Court, please. I'm assuming for the purposes of this argument that we are limited to the most recent supplemental. And I should have addressed that. Obviously, we're not going to be hyper technical, but I think that's what we had in mind, that we would address that. Then I will certainly focus my arguments on that. This Court's request for the supplemental briefing asks a specific question, which was, may State Farm rely on privileged attorney-client communications without the disclosure of those communications to either the Court or the adverse party? We have answered absolutely not. State Farm did not answer that question. State Farm's briefs did go to the ad issue, waiver issue, but they never answered the question which was posed by this Court. Are they permitted to withhold those documents, use them for summary judgment, and still claim privilege and without a waiver? Under the law, under Rovedo and the Supreme Court cases, there are no exceptions for privileged communications. There are no exceptions for privileged documents. And it makes sense because there really couldn't be. If you get past this case, take, for example, a medical malpractice case where you've got a medical studies act, for example, which has privileged peer review. So if one allowed privileged documents to be used but not disclosed, then someone on the defense could look at the peer review, look at the privileged documents, and say, well, I'm not going to show you the privileged documents, but I can tell you, you need to trust me. I've read them, and I know this doctor did not deviate from the standard of care. And then the adverse expert or party couldn't challenge that. That's completely inappropriate. And under Rovedo and under 191, the evidence has to be admissible evidence. So you can't have secret evidence or secret documents or secret opinions that are not admissible. If they're not disclosed, they're clearly not admissible. They can't be put into evidence. So they would not be admissible. Roberts. Counsel, let me interject a question, maybe take a step back in the proceedings. So this motion for summary judgment was originally filed. It was a written motion and a supporting memorandum. And there were really kind of two arguments. They weren't necessarily broken up as two arguments. But one of the things they argued was just that as of this date, four years into the case, you have no evidence. And then the second part was what we are talking about with the affidavits, McCann, O'Day, et cetera. And one of the things that I understand State Farm would be arguing is what about our first argument, which, you know, in your response, you threw out these appellate briefs. You referred to it as a cell and text hybrid sort of motion. There was no evidence. And if you don't agree with that, then here we've got these affidavits. But what about the first part? Like, if we thought that State Farm won the day on that argument, do we need to reach this other stuff? Well, my – I would say if you think they won the day on anything, that's certainly something that you would do. But they would still have to have all of the documents attached upon which the affidavit relies. So what you're suggesting is you throw out the affidavits. Well, I'm suggesting that there's really kind of two arguments. I mean, you even called it a hybrid. I can't say I've seen an argument quite presented this way before, but I guess you can do it this way. The cell and text motion is not relying on any information. It's just saying they haven't proved their case. We win. I – So why should – why couldn't State Farm win on that? Okay. Because State Farm said it wasn't a cell and text type motion. Because under a cell and text type motion, I argued in the trial court back in 2014. I said it's a cell and text type motion, which, therefore, I need more discovery. And I need other things because a cell and text motion is supposed to be after all of the evidence is in, all of the discovery is completed. We have not completed discovery from my perspective. And I said that's grounds alone. Because it's a cell and text motion saying you haven't yet proven your case, I wasn't required to prove my case at that point. Okay. So let me make sure I understand this. You've said this, but I just want to make sure I understand. Okay. There was no case management order? That is correct. Okay. There was no discovery cutoff? That is correct. Okay. There was never a 218 order. There still hasn't been. There still is not? A 218 order. That's correct. With regard to Mr. O'Day? That's correct. I see. Okay. So this – the whole procedure was very – Well, you never really had your discovery or what you thought you were entitled to. That is correct. And they moved for summary judgment before the discovery cutoff had ever been entered, before there was any order cutting off discovery. So you never really had your – to get your discovery. That's correct. And that's what I argued when I said, well, it's a cell and text motion. This was the initial argument from my end. Gee, this is a cell and text motion because that's how I read it. They're saying you didn't get enough evidence. I said it's cell and text. State Farm came back and said, no, I misread our motion. It's not a cell and text motion. Which then, of course, cuts off that argument if they're saying, okay, it's not a cell and text motion, which is why I then moved to, well, okay, if it's not a cell and text motion and that's how you're going to prevent me getting this discovery, well, now let's focus on what you are affirmatively doing. And what you're affirmatively doing is vaguely flawed. So that's how you get past that first part is because State Farm themselves said it's not a cell and text motion. I believe it was a strategic decision on their part because they didn't want me to have the other discovery. And under a cell and text motion, they would have been subjected to more of this discovery that I was complaining about not getting. So their response was, no, it's not cell and text. It's our motion. And where do you get the idea that they disavowed that it was a cell and text motion? Are you saying in a written document, in the oral argument for the trial court? Yes. I don't have that at my hand this moment. That's okay. But, yes, when you look at it, I believe the first time they say that is in response to my motion for additional discovery. And there were two motions for that. So it might have been in that response. If not, it was in their reply to my response on the summary judgment. And also I believe in the brief on the first appeal because that was at least addressed in the first appeal of saying, we said it was cell and text. They said it was not. And they came back in their brief and said, no, it's not a cell and text type motion. And if it had been, again, the discovery that eventually during that period of time that this State Farm was out of the case and on appeal and I was actually getting some of the discovery from O'Day that I had previously wanted, a lot of new information came forth. And that would have certainly been helpful in preventing summary judgment. So the failure to comply with Roe v. Doe, which is what I was left with arguing after they acknowledged that it wasn't a cell and text and the trial court denied any additional discovery, it was fatally flawed. And they didn't address it. I think I said in my supplemental brief, and I just want to mention it, I certainly understand that waiver is not binding on this Court. You certainly have the power and the authority and jurisdiction to look at things that the parties might waive. But I do point out that State Farm would have waived this argument. And I think that's important to note because the only time this argument of confidentiality and use of privileged documents or failure to comply came after they were directly challenged. State Farm throughout this case, when presented with things that are not favorable to them, they just ignore the issue. And it wasn't until they were directly challenged on that issue that they came up with privilege. But I would point out that seemed to be disingenuous because they never claimed that. The trial court, the first appeal, the second trial court, the second. Well, it's probably fair to say they were never forced to. I mean, they – I take Mr. Gahan and his word that that was their position, although certainly they had always taken the position that those documents were privileged, right? I mean, you know that better than anybody. You know, I – you know, reading the oral argument of your summary judgment, there were – I think it's fair to say that the judge never turned to State Farm and said, why don't you attach these documents? That is correct. I'm not arguing that they – I grant you they didn't volunteer it, but I don't think they were ever asked to. Well, let's assume that that's correct. They didn't attach the non-privileged portions either. That's one of the other reasons I say this was sort of an after the fact. They – you know, there were non-privileged portions of the claim files, non-privileged portions that they didn't claim privilege on that McCann reviewed, and they didn't attach those. So the question was, why aren't you attaching them? And, you know, as best I could see, it's because nobody made them. I mean, when it really came down to it, I was arguing and had been arguing from the beginning, hey, you know, kind of stop this train, there's noncompliance here, and that was not availing to me. And so they didn't because they were never forced to. But they never claimed that the reason they didn't attach it was privilege. And the only excuse before the oral argument the last time we were here that State Farm ever gave was that it was too voluminous to do it. And that they did in their response brief on the first appeal. And I think it was even maybe in a footnote. But it was towards the end of the brief where they said, oh, and by the way, it was just too voluminous. We were trying to be nice to the court and counsel by not muddying up the record. And that was the only excuse that we have ever heard to why there was noncompliance until we were here. And then on the privileged aspect, the ad issue waiver, State Farm did not have to file a motion for summary judgment. State Farm did not have to do affidavits and witness testimony. That relied on confidential documents. No one required State Farm to set up and proffer a summary judgment or affidavits or documents that relied on confidential information. Why they did that, I can't answer. But they weren't required to do that. There was no order that said that. They decided this is our best way to get summary judgment, to use privilege and confidential information, and then just sit back and tell her, you know, to take a hike. Because we're not going to tell you what we base this on because we're going to rely on this confidential information. One might infer that they didn't do a summary judgment with witnesses that weren't using privilege information because they would not have prevailed. I mean, that is something to consider, that they needed some of that privilege information they believed in order to prevail. Otherwise, why wouldn't they have just had witnesses that didn't review the privilege information or based their decisions on non-privileged communications? Can I ask you a related question? Sure. State Farm has said at least once in one of the submissions, I'm losing track of which, that they offered you a sneak peek at these documents and turned it down, something about not wanting to be gagged by them. Can you give us your take on what happened? I certainly can elucidate on that. That was very early on. That was before when we still had Judge Billick on the case, so we're going back a few judges. It was Judge Billick, and we were having the initial arguments when they first raised this jointly good offense and whether they could use it, et cetera, and also whether there would be a protective order entered. So it was really during this argument about the protective order, and that was a couple of status hearings before Judge Billick. And at one point that was suggested, we'll get you all this, but you won't be able to use it or we won't be able to use it. What Judge Billick said, and we proffered that to Judge Billick, and Judge Billick looked at me and he said, so you're talking about a clawback where everybody gets to see everything, but then you're going to claw back what you think is privileged and not let anybody else do it. And he said, don't do it. It's just impossible. And he went on about some case he had. I don't remember specific. But it was Judge Billick who said, that is not a solution to this problem. Everybody do your privilege logs. Everybody do, you know, you get what you claim is privilege, he gets what he claims is privilege, and we're going to move forward. And that's how we moved forward. So was I amenable to that? At one point we were discussing it. I don't know whether ultimately, I don't know how I would have decided, frankly. I, you know, I don't know how I would have decided. I know that we were considering it, and that was brought before the court, and it was the court that said this clawback idea that everybody gets the information and then claws back what's privileged just does not work. And I can see that. So here's my next question. These affidavits were originally drafted by State Farm, not for some judgment, right? These were, these, well, that's what State Farm said, is that they were, they came to you before the depositions of McCann and O'Day. And I'm not entirely sure why they were given. I'm not being critical. I just don't know why. But is it true that you had them before? I can tell you I got them the day before one of the depositions. And I have to be honest and tell you, I don't know whether it was O'Day's or McCann's. Okay. Before one of their depositions, across my facts, comes this affidavit, and I had to call the other side and said, did I miss a, did I miss something here? Why am I getting this affidavit? And they said, well, you know, you got it because we're giving it to you. I said, okay. Now, my personal opinion, why did I get it? I got it because there was a time limitation on McCann's step. There was a time limitation on O'Day's step. If they give me this affidavit, then they're going to get my strategy over to looking at the affidavit, and I'm going to forget to ask the questions that I really need to ask in my very limited time frame. So to me, it was sort of like, here's your roadmap, Brace. Ask these questions and ignore the things that you need. Okay. And I believe the McCann deposition is in the record. I don't know if I recall the O'Day deposition. But did you at any point in time demand the documents that were referenced in those affidavits or it was certainly at least in the McCann affidavit? Yes. During the course of the deposition, when some of these came up, I said, well, what about this? What about that? And the response was to jointly defense. And, again, the timeline was at that point in time, they had the jointly defense and there had been no ruling yet on whether or not they could use it. Judge Garcia ultimately ruled that it was okay and you upheld that ruling. But going back to when the deaths were occurring, they ---- Well, but that's where conversations would happen after you sued them. I mean, the jointly legal defense. Tell me if I'm wrong, but I thought the claim file materials and the claim activity logs were things that were going on during the lawsuits that Mr. O'Day was prosecuting on State Farm's behalf. That is absolutely correct. That's exactly ---- You are correct on that. Okay. But they used the jointly legal defense as an additional privileged claim. Okay. And so we had that privilege and then we had the ---- but we got a privilege lock for that so we knew about some of these other documents and then so it would be used for the whole ---- Okay. I wouldn't normally have asked these questions, but some of this record is just very ---- it's very hard to find things and it's not all in order. So I just wanted to clarify that. You've got a couple minutes if you want to continue. Okay. Just very briefly, some of the things that the Court touched on it, some of the things raised by State Farm, are things that when you have a motion for summary judgment, State Farm seems to want to push it away and blame the plaintiffs for it. But the motion for summary judgment has to stand on its own two feet. And I just point out the obvious. There's no requirement to do discovery. I mean, there really isn't. It's an option. It's a privilege to be allowed to get discovery in a civil case. But there actually is no rule that makes us do discovery. And you can file a summary judgment before you file an answer. You actually can do it before there's ever any discovery at all. So State Farm claims any claims of, well, this discovery wasn't done or she didn't follow up with that or the plaintiff didn't do this. It really is immaterial. Because their motion for summary judgment has to stand on its own. If we never did any discovery, that motion for summary judgment had to be able to stand on its own. And without question, the documents upon which these affidavits relied were not attached. There was no reason for them to be not attached, and it was a complete failure under the rules. Thank you. All right. Thank you, Ms. Klein. We'll give you a couple minutes for rebuttal. Thank you. Mr. Don? We'll make sure you have the time you need. Thank you, Your Honor. May it please the Court. Jim Gaughan, on behalf of State Farm. The focus of my arguments will be on three related issues. First, the at-issue doctrine does not require the disclosure of privileged portions of State Farm claim files. Second, no additional document, needed to be attached to the McCann or O'Day affidavits as they testified to the absence of documents. And third, this is a court of review. Plaintiffs never move to compel the privileged portions of the claim files. In addition, plaintiffs have identified no valid grounds to challenge the Tri-Court's denial of plaintiffs' motion requesting more discovery. As a result, the judgment in favor of State Farm should be affirmed. Isn't the 191 affidavit and the written objections from plaintiffs to your motion for summary judgment about Robodeaux v. Olafon, isn't that right there akin to a motion to compel you to turn those things over? She's saying that by relying on those documents in the affidavit, you have to attach them, so give them to me, or deny the motion. Isn't that the same thing as a motion to compel? Well, Your Honor, I think, first of all, we need to look at the timeline of this case. And there was a very important exchange between the Trial Court and Plaintiffs' Counsel that was overlooked. And that is, after four years of litigation and a series of discovery disputes, the Court said, what more do you need? So there was this challenge to the Court that somehow or another this case was improperly managed because there wasn't an official case management order. But clearly the Court was allowing discovery on an ad hoc basis and said, what more is there to be had here? Plaintiffs' Counsel identified what was required. Plaintiffs' Counsel received that information. There's no dispute about that. And then there was no dispute that State Farm would file the motion for summary judgment after plaintiffs received that information, and that's exactly what happened. Well, could I ask you, Mr. Vaughan, in the motion for summary judgment, there's statements that Roday, Mr. Roday and McCann, relied on review of certain documents, right? Well, let me take this in with each affiant. So with regard to O'Day, please look at that affidavit. It has over 50 exhibits to it. Those are attachments from the court files that identify the basis for his reliance. But when O'Day testifies under oath repeatedly in that affidavit that neither I nor my law firm notified State Farm of any problems with the service of process, he does not cite the documents. He cites, by my count, 53 different documents. But every time he gets to the part where he did or did not communicate with State Farm, there's nothing. So he doesn't seem to have personal knowledge of anything else that happened in the Selby case or the Young case or the other four cases, nor would we expect him to have personal knowledge. He's going back a few years to four cases out of a thousand. So for all those, he cites all these documents. Whenever he gets them to neither I nor State Farm communicated, he goes silent. He doesn't attach any document. So is your position that he just knew that from personal knowledge? That's right, Your Honor. Including what his law firm said to State Farm, not just him? That's right, Your Honor. It's a small shot. How could he ever testify to that in court? Well, plaintiff's counsel had that affidavit in connection with his deposition. Plaintiff's counsel had the opportunity to cross-examine on these very points. And by the way, what plaintiffs are alleging is misconduct, right? These are serious allegations. One would know from firsthand knowledge whether or not there was any reporting of the misconduct that's alleged. You wouldn't have to look at your files to identify whether or not you reported to State Farm the misconduct that's been alleged here. I mean, I understand what you're saying, and that's a reasonable statement in some contexts. I mean, if there's a motion for sanctions or something, or someone saying this is a conspiracy, a fraud on the court, those kind of things tend to stick in your mind. I agree. But this affidavit spoke to things like any motions to vacate, motions to quash service. I mean, those things happen all the time, right? I mean, they don't even have to be meritorious, but people move to quash service. They move to vacate technical defaults based on a lack of service. I mean, that's not necessarily misconduct, right? That's a fairly standard thing to do. What's alleged here is that there was improper service of process that O'Day knew about and then obtained a default judgment based upon known improper. That is something that he would know if that occurred and whether or not he reported that to State Farm. That is clearly within his personal knowledge. That's clearly something that he would know about. And let me emphasize again, he was subject to cross-examination on those statements because Plaintiff's counsel received the affidavits ahead of time. Not only that, but Plaintiff's counsel admits that she never moved to compel any further information or testimony from O'Day. What about with him? Did he refer to documents? Well, what's at issue here, and by the way, one last thing on O'Day. We mentioned how muddled the record is. When you look at Plaintiff's motions with regard to the O'Day affidavits, there is no challenge that something wasn't attached. There was an issue of whether or not what was attached was not properly authenticated and all, but there wasn't an issue with regard to O'Day that there was any sort of robado problem, and that is in the record. It does take some effort to read, you know, many, many motions to find the absence of that argument, but that is the case. Okay. Fair point. I'm sorry. Justice McBride, I have a question. Well, it was about McCann. Did he rely on documents? Well, what's at issue here is whether he relied on the privileged documents such that there would be some sort of waiver. Yeah. We're talking about... Did he rely on privileged documents? No. Did he rely on documents? He reviewed documents, and he found no responsive information. So the equivalent would be... ...the documents he reviewed in order to ever be able to testify to that fact in a court of law. Your Honor, I'm so happy you framed the issue in that way because when you say, does an affiant have to attach the documents reviewed, the answer is clearly no because the affiant will, in many cases, will review thousands of documents, hundreds of thousands of e-mails perhaps, and not every document that is reviewed needs to be attached to the affidavit. No, but that wasn't the whole question. Yeah. That's not what I was asking at all. I don't think a witness can ever say that I reviewed these documents, and they didn't say what you're asking for and then remain silent and not produce that document. I don't think anyone would ever be allowed to testify about their review of documents without those documents being seen by someone else. How can you possibly cross-examine or ever contest that information if it's not before the fact finder? Again, Mr. McCann was cross-examined by plaintiff's counsel. There was no motion to compel filed. Again, this is a court of review. There was no motion to compel filed with regard to a further McCann testimony. We're not here to determine whether there was a motion to compel. We're here to determine whether or not that kind of evidence, regardless of whether there was cross-examination, would ever stand up and be admissible in court. That's what summary judgment is all about. It's a substitute for actual trial testimony, and anything you put in an affidavit, just because you say this is what I reviewed and there was nothing there, is not a substitute for trial testimony because it's not based on anything. A witness can't simply refer to documents and say I reviewed them and they don't show anything. That's not admissible testimony. There's no – that is not competent. I mean, unless I'm missing something, I don't believe a witness can ever say I reviewed these documents and there's nothing in them, but then never even be examined on what is not in those documents. Do you see what I'm saying? Your Honor, but what's framed in this particular case is the at-issue doctrine. So what you're saying is that State Farm would be required to attach or disclose non-relevant privileged information. And the answer to that question is – Well, who tells you whether it's non-relevant privileged information? An in-camera review by the court or just simply the witness saying that this is privileged and I don't have to disclose it, therefore I don't have to say anything? Well, this issue is standard where you present a privileged log. A privileged log was presented here. If someone wants to challenge whether the privileged log properly withheld privileged communications, a motion to compel would be in order, and one was not filed here. Okay, counsel, let's forget about the privileged for a second. Let's say they were all non-privileged. If you say I looked at a bunch of documents, A through Z, and I've looked at every page and there is nothing in here that says that State Farm talked to O'Day or O'Day to State Farm about service and process, that is relying on those documents. It's not just saying I reviewed them. Just casually saying you reviewed things, maybe you don't have to attach there, but if you vouch for the contents of those documents in some way, you are by definition relying on those documents. And I think Justice McBride was right. If we were at trial and you called O'Day as a witness and he said, or McCann as a witness, and said I reviewed all these documents and there's nothing in there, the judge would probably not even let you ask that question until you put the documents in. But certainly before he let the jury hear that testimony or she, the judge would say those documents have to be in because it's actually the documents that are supplying the proof. The proof of the absence of something, okay, but still those documents are the proof, right? It's not McCann who's the proof. And so how can you put in an affidavit that vouches for the contents of documents, privileged or otherwise, and then not attach the documents? That's what we're struggling with here. Well, and we do disagree on what the definition of reliance is or versus review. Simply reviewing documents to prove the absence. He commented on the substance of those documents, didn't he? He commented on the absence of the substance. So if you're trying to prove a negative, where does it end? What is the standard that this Court would identify? Well, you look at the documents and you see if what he's saying is actually correct. He gave an opinion that there was nothing in the documents that he reviewed that would suggest that State Farm was aware of any of the things that he was doing, right? Yes, he reviewed those documents, correct. So his statements are based on documents that he says disprove knowledge by State Farm. So that's why the documents are important. I don't think a witness can say I looked at these, there's nothing there, and therefore we're entitled to summary judgment. I don't see how a witness would be allowed to testify about documents that they reviewed that he's saying there's nothing there, there's an absence of these things, and that he could just say that without someone actually looking at it and seeing if what he says is true. I don't know. I mean, that's not a basic evidence. There might be cross-examination, but not effective cross-examination if the other side can't see what he's testifying about. Well, I'm talking about competency of evidence. I'm talking about whether or not a witness can competently testify that I reviewed documents and they did not show this. That is not competent if the documents aren't there for someone else to check them and to see if what he's saying is accurate. I don't think you can refer to documents and not produce them. I don't think that's competent, and I think that summary judgment standards require that whatever the witness says, either by way of affidavit or deposition or whatever, that they have to be based on something he could actually say in court. And I don't think a witness can say in court I reviewed these things, there's nothing there, but you don't get to see them. Well, first of all, we did offer the quick peek. Plaintiff's counsel's suggestion that Judge Billick rejected that is not correct. It was a long time ago, but what I do remember, because I am familiar with the quick peek, that unless I had Ms. Wine's consent, this wasn't going to work, and I did not have Ms. Wine's consent, and I did discuss that with Judge Billick, which was unless Ms. Wine will agree to this, we can't get it done, because if she agrees that her receipt of these documents does not amount to a waiver, then I don't want a court order requiring it because it's a system that has a leak to it, if you will. So she did have the opportunity to review those documents. I mean, look at it from my perspective. I'm not trying to hide anything here. I'm trying to offer these documents without waiving a privilege to prove a negative here. And by the way, the McCann affidavit, as I set forth in the papers, is not essential to the motion for summary judgment. You have the O'Day affidavit, and even above and beyond the O'Day affidavit, you have plaintiff's own discovery responses that identify no basis in fact for the conspiracy or the abuse of process claims. Abuse of process, by the way, is a disfavored tort in Illinois. So in addition to the affidavits, there was affirmative evidence, which was the submission of the interrogatories to the court. They're attached to our papers that would have triggered plaintiff's burden to come forward with some evidence to support this conspiracy theory. And there's none. We're now approaching 10 years of this litigation.  And, Your Honor, Justice Ellis wanted the analysis of what needs to be attached to be divorced from the privilege. You can't do that here because what you would be requiring is a waiver of attorney-client privilege, especially in the context where there is an allegation of a conspiracy between an attorney and a client. So how is that allegation supposed to be refuted? The attorney and client didn't put that allegation of conspiracy at issue. They need to counteract that. And to require the waiver of that privilege in order to rebut that allegation is neither fair nor is it in accordance with the at-issue doctrine and the Hearn and Rompelung cases that we cited today. Counsel, I don't think anyone disputes that you could have just clung to the privilege and said, prove your case and swine, and you can't. I'm not saying you can't and swine, but, I mean, that could have been your position is, you know, you're never going to get these documents. We're never going to see you break this privilege. If you go to trial, we'll go to trial, but we'll never turn this thing over. But you didn't do that. You moved to summary judgment. You went on offense. And you said, we've looked at these documents. Nobody else gets to, but we've looked at them, and we win. Congratulations for us. I mean, how are you able to do that? How are you able to go on offense? I mean, summary judgment isn't something that everybody does. And that's not the same thing as just denying the case. I mean, if you had just done a straight cell attacks motion, for example, I could see that. Now, that would be something you could do. I'm not turning over anything, but I'm saying you don't have the proof. And then we could have argued about whether or not, you know, she'd been given enough discovery and all that stuff. But when you say, I do have evidence, but only I'm going to see it, I think that's what's giving us pause here. How can you maintain the attorney-client privilege while using that on offense like that? A summary judgment motion in this context is not on offense. We are simply proving up the denial of an allegation. We were four years into this. Proving up the denial is different than denying it. Proving it up is going on offense. It's saying we actually have documents to support our position. As Your Honor may have seen, you know, we did cite the State Farm v. Griggs case out of Colorado. A similar situation where there was, you know, an attorney affidavit denying the allegations of misconduct. There was no at-issue waiver found there. There should be no at-issue waiver found here as well. Again, from a practical perspective, when there's an allegation of a conspiracy between an attorney and a client, is Your Honor saying that you just have to go to trial? And it may be six years before you go to trial. No, I don't think so. But those are, but those, that's what has happened. We're not saying you have to go to trial, but we're saying if you're going to substitute that trial with a summary judgment motion and rely on documents that you will not produce, I mean, that's a totally different issue. And I would like to emphasize again that this issue is now focused on the McCann affidavit. If you feel that way, you can strike the McCann affidavit. The summary judgment motion is still supported by the interrogatory responses and the O'Day affidavit. And it could even be supported only by the discovered responses of plaintiffs. Okay, Mr. Connell. Thank you very much. Thank you. Ms. Wein, do you have a brief rebuttal? Thank you. Very briefly, just a couple of things that were raised I'd like to address. One is the State firm wants the privilege. They need to protect the privilege. The ad issue, it goes to that. If you're claiming that something's privileged, then you need to protect the privilege. You can't affirmatively go beyond that. With regard to counsel's conceding, well, just throw out the McCann affidavit if you don't think it complies, it's still not going to solve the problem with the O'Day affidavit. All of O'Day's documents were not attached, as the Court knows. Additionally, O'Day's credibility was severely compromised, certainly in the deposition, and then what we now know is ultimately being sanctioned for misrepresentations to the Court. But even before that was entered in his deposition, they were just flat-out untruths. And whenever you have to – We don't look at credibility at all. Exactly. That was my next point. And whenever you have to look – But you just told us to. Well, what I'm saying is that whenever you have to look at credibility, you can't grant summary judgment. That's where I was going with that. My point is that you can't look at credibility, and since it was – and I think there's some case law that I threw in somewhere in all of these briefs, and that was the point on that. You can't look at credibility, and once you've got a witness that it's not straight on, that's a problem on summary judgment. The other – oh, I just wanted to briefly – counsel started out with saying about that timeline, and when Judge Garcia said to me, well, what do you need? If the court is impressed by that at all, the actual reading of the transcript, you'll see that what was happening is I was, again, requesting this additional discovery that they were calling class discovery that I kept saying was, no, it's really the proof of this conspiracy and the coordination of these two defendants. And Judge Garcia very nicely said, well, you're not getting that. And I said, okay. And he said, well, what do you need in light of that? So in light of his telling me I'm not getting all of this, now what do you need? And when you look at that, he'll say, what do you need? And I'll say, I'll take what I can get. And at a minimum, I need this to start, and that's – so that – I just wanted to point that out. That's what that was. Unless you have any other questions. Thank you. Okay. Thank you. Thank you very much, and thank you both again for all the extensive briefing that we put you through in this case. It's a very interesting case, and we will – we appreciate everything you've done. We will put the matter under advisement. Thank you. Thank you.